## IN THE COURT OF COMMON PLEAS
### CIVIL DIVISION
### PORTAGE COUNTY, OHIO

**BROOKSTONE GENERAL
CONTRACTORS INC.**

CASE NO. 2015 CV 00105

Plaintiff

**Judge Becky L. Doherty**

-vs-.

**HOWARD JONES, et al**

**ANSWER
AND COUNTER-CLAIM
JURY DEMAND**

Defendant

---

Now come Defendant, Howard Jones, and hereby files his Answer to the Complaint filed

herein by the Plaintiff, Brookstone General Contractors, Incorporated.

### COUNT I – BREACH OF CONTRACT

1. Defendant, Howard Jones, is without sufficient information to form a belief as to the truth

   of the allegations in paragraph 1 and therefore denies the same;

2. Defendant, Howard Jones, admits the allegations set forth in paragraph 2 of Count 1 of

   the Complaint;

3. Defendant, Howard Jones, admits that a contract was entered into between the Plaintiff

   and the Defendants, Howard Jones and Vicki Jones for the reconstruction of Defendant's

   property at 4134 Rock Spring Road, Ravenna, Ohio 44266. Defendants admit that the

   contract attached hereto is in part the contract entered into between the parties and in part

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

Page 1 of 20

a portion of the contract was blank at the time of signing. Defendants further acknowledge that a second contract was presented to the Defendant's and signed by them for the construction of a garage.

4. Defendants deny that the Plaintiff furnished all of the labor and materials for the construction of the property located at4134 Rock Spring Road, Ravenna, Ohio 44266. Defendants further deny that the Plaintiff was working on their property and supplying any material or labor in any significant manner.

5. Defendant denies each and every allegation set forth in paragraph 5 of Plaintiff's Complaint;

6. Defendants deny that the Plaintiff performed the work as set forth in the contract and that the Plaintiff has failed to complete the construction of the home as set forth in said contract.

7. Defendants deny each and every allegation set forth in paragraph 7 of the Plaintiff's Complaint;

<u>**COUNT II – BREACH OF CONTRACT AND NEGLIGENCE**</u>

8. Defendants admit those paragraphs that have been previously admitted as set forth in paragraph 8 and deny each and every other allegation as set forth in paragraph 8 of Count II of the Complaint.

9. Defendants are without sufficient information to form a belief as to the truth of the allegations set forth in paragraph 9 and therefore deny the same.

10. Defendants deny each and every allegation set forth in paragraph 10 of Plaintiff's Complaint.

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

11. Defendants deny each and every allegation set forth in paragraph 11 of Plaintiff's Complaint.

## FIRST AFFIRMATIVE DEFENSE

1. Plaintiff's Complaint fails to state a claim against these answering Defendants upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

2. All or part of Plaintiffs claims against these answering Defendants are barred by the statutes of frauds.

## THIRD AFFIRMATIVE DEFENSE

3. All or part of Plaintiffs claims against these answering Defendants are barred by the doctrines of waiver, estoppel, laches and/or unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

4. Defendants state that Plaintiff has failed to minimize and mitigate damages allegedly incurred which precludes recovery against these answering Defendants.

## FIFTH AFFIRMATIVE DEFENSE

5. Defendants state that Plaintiff assumed the risks, which caused any or all of the injuries, losses and damages.

## SIXTH AFFIRMATIVE DEFENSE

6. Defendants state that if Plaintiff failed to enjoin parties under Ohio Rules of Civil Procedure, Rule 19 and Rule 19.1.

**FRANK J. CIMINO**
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

3

### SEVENTH AFFIRMATIVE DEFENSE

7.     Defendants state that Plaintiff lacks standing to assert all or part of the claims asserted against these answering Defendants.

### EIGHTH AFFIRMATIVE DEFENSE

8.     The acts of these Defendants in no way proximately caused any or all of the injury or alleged injuries or damages which Plaintiff now complains; therefore no liability exists on the part of these answering Defendants for any such alleged damage or injury.

### NINTH AFFIRMATIVE DEFENSE

9.     Defendants, Howard and Vicki Jones, incorporate herein by reference as if fully set forth herein every applicable defense asserted by every other Defendant in this action.

### TENTH AFFIRMATIVE DEFENSE

10.     Defendants reserve the right to add additional affirmative defenses which are discovered or otherwise become apparent during discovery.

WHEREFORE, Defendants having fully answered the Complaint of the Plaintiff prays that the same be dismissed and that the Plaintiff go forth with its costs.

### COUNTER-CLAIM

Now come Defendants herein, Howard Jones and Vicki Jones, and for their Counter-Claim states as follows:

### FIRST CAUSE OF ACTION

1.     Defendants, Howard L. Jones Jr. and Vicki L. Jones owned a home located at 4134 Rockspring Road, Ravenna, Portage County, Ohio.  Said home was completely destroyed

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

by a fire on November 8, 2013. The entire home was lost along with its contents. The Plaintiffs home was insured by Allstate Insurance Company and covered pursuant to Claim No. 305619421. The Adjuster for Allstate was Thomas D. Jones and based upon his evaluation of the loss, determined that there was an actual cash value loss in the amount of $105,517.51. The Adjuster also determined that there was an applicable depreciation to the property in the amount of $38,713.42. The Replacement Costs Coverage Evaluation with Allstate Insurance Company indicated that in order for the Plaintiff's to recover an amount in excess of the actual value of $105,517.51, Defendants must replace the damaged property within 180 days. Namely the $38,713.42 was not payable under the policy unless the damaged property, their home and contents, was replaced within 180 days. The Plaintiff was aware of the foregoing time limitation on the receipt of the applicable depreciation.

2. It is further represented that the Defendant's would be reimbursed for their costs that they incurred in excess of the actual cash value amount up to the recoverable depreciation as noted in the worksheet. The Defendants were required to send receipts indicting that the replacement had been completed within the 180 day time period. A copy of said replacement cost worksheet is attached as Exhibit A.

3. Defendants would represent that they along with the Plaintiff, Brookstone and Burns entered into a written contract for the reconstruction and refurbishing of their home located at 4134 Rockspring Road, Ravenna, Portage County Ohio, and a copy of said Contract is attached hereto as Exhibit B. Said Contract was executed on February 2, 2014.

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

4. Defendants, Howard L. Jones Jr. and Vicky L. Jones (hereinafter "Defendants) set forth the fact that Exhibit B had been entered into with the Plaintiff, Brookstone General Contractors By Design, Inc. (hereinafter "Brookstone") by its' President/Owner, James Burns (hereinafter "Burns") for the repair and refurbishing of the Defendants' home located at 4134 Rockspring Road, Ravenna, Portage County, Ohio. coupled with Exhibit B was an additional contract for the construction of a new garage to be included in the cost of the reconstruction and refurbishing of the home. (See Exhibit C) Defendants state that Brookstone/Burns began work on their home but failed to complete the work and did not perform the construction on Defendants' home in a workmanlike manner and never began construction on the pole style garage. Draws were taken on the work for a total of $93,395.51 as of July, 2014.

5. Defendants further state that Brookstone/Burns received additional monies directly from Allstate Insurance, namely a payment in the amount of $15,700.00 for the additional square footage required per the building code and the replacement of the septic system; and a sum of $8,846.00 for the demolition of the damaged/burned home.

6. Defendants state that the Plaintiff, Brookstone/Burns failed to perform a significant portion of the work that had been set forth in the contract marked Exhibit B, and no work toward Exhibit C. The Plaintiff and the additional Defendant's breached the contracts and what work was done, was not done in a workmanlike manner. Additionally, a significant portion of the construction has failed and further had not been completed and as a result of that, Plaintiff's breach has resulted in significant damage to the Defendants' home. In conjunction with the reconstruction and refurbishing of their home, the

FRANK J. CIMINO
ATTORNEY AT LAW
250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO
330-297-5788
330-297-7578 Fax

Plaintiff, Brookstone/Burns entered into a second Contract to construct a 32 x 38 foot pole style garage that was to be constructed which garage was included in the purchase price set forth in Defendant's Exhibit B. A copy of the Contract for the construction of the 32 x 38 foot garage is attached hereto and marked as Exhibit C. Said Exhibit C was also entered into between the parties on February 2, 2014.

7. Exhibit B, the Contract for the reconstruction and refurbishing of the Defendant's home had a purchase price of $155,230.93.

8. The insurance check for the actual cash value in the amount of $105,517.51 was forwarded to the bank holding the mortgage on the property, HBC Mortgage Services by fax dated February 7, 2014. Also faxed was the insurance loss information sheet, the letter of responsibility, the replacement cost estimate and the HSBC Requirement Sheets, all forwarded by Sherry Pope on behalf of Brookstone/Burns. A copy of said documents is attached hereto and marked as Exhibit D.

9. On March 6, 2014 in light of the fact that the Plaintiff Brookstone/Burns did not get a Zoning Certificate within approximately 30 days from the signing of the contract, the Defendant, Howard L. Jones Jr. obtained a Zoning Certificate on March 6, 2014. A copy of said Certificate is attached hereto as Exhibit E.

10. On April 14, 2014 a Settlement Upgrade was issued by the Allstate Insurance Company reflecting the cost of replacing the septic that had been improperly removed by the Plaintiff, Brookstone/Burns and additionally in order to meet the square foot requirements of the Building Codes for Edinburg Township. The replacement cost for the additional square footage requirement as determined by Allstate Insurance Company was

**FRANK J. CIMINO**
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

$11,516.96; and the replacement cost for the septic system was an additional sum of $15,345.00. However, the policy limits only provided an additional amount payable of $15,700.00. Said additional issuance of funds to the Plaintiff, Brookstone/Burns, is reflected on Exhibit F.

11. Defendants state that Plaintiff Brookstone/Burns misrepresented to the mortgage holder, HSBC the amount of work that had been completed on the home to obtain their draws. Funds are now being held by HSBC in the approximate amount of $38,000.00, which should be turned over to the Defendants, Howard and Vicky Jones.

12. Defendants would further state in particular that the Plaintiff, Brookstone/Burns failed to complete:

   a. the concrete in the basement and the exterior of the home and the entire foundation requires being dug up and replaced with the correct backfill;

   b. the gable ends need to be torn off and replaced because they are warped beyond 2";

   c. the floors were beginning to mold;

   d. the plumbing had not been finished;

   e. the heating had not been installed;

   f. complete inspections had not been completed properly;

13. A significant amount of funds have been paid by Defendants, Howard and Vicky Jones out of pocket to pay for materials and sub-contractors towards the repairs and completion of the home with much still to be done. The Plaintiff, Brookstone/Burns work was not installed in a workmanlike fashion.

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

8

14. Defendants, Howard & Vicky Jones, have expended personal funds and paid contractors for the correction of the failed workmanship of Plaintiff, Brookstone/Burns herein, to wit:

| | | |
|---|---|---|
| a. | Lowes: paint, flooring, doors, kitchen cabinets | $22,998.00 |
| b. | Advanced Plumbing, Inc. | $ 9,000.00 |
| c. | 24/7 Mechanical Company LLC HVAC | $ 8,600.00 |
| d. | Garage Door | $ 1,479.00 |
| e. | Clegg Concrete Construction | $ 8,600.00 |
| f. | Kozma Electric Co. | $ 9,000.00 |
| g. | Carpeting | $ $1,925.49 |
| | Total | $ 61,502.97 |

15. Defendants state that Plaintiff, Brookstone/Burns removed building materials, purchased from insurance funds for the reconstruction and refurbishing of the home, from the Defendants' property, to wit:

a. Siding

b. Shingles

c. Block

d. Drywall

e. Basement windows

f. Lights

g. Lumber

h. Exhaust fans

i. Window screens

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

    j.  Insulation

    k.  Hauled loads of dirt off property

16. Defendants would further state that when Plaintiff Brookstone/Burns was notified by Certified U.S. Mail that it/they were no longer to be involved on the job, Plaintiff Brookstone/Burns vindictively removed the aforesaid building materials that had been paid for by Defendants from the homesite and refused to return them. An itemized list is set forth in paragraph 15 herein.

17. Defendants state that Plaintiff Brookstone/Burns on October 21, 2014 filed an Affidavit for Mechanics' Lien in the amount of $76,300.42 against Plaintiffs' property located at 4134 Rockspring Road, Ravenna, Ohio 44266. Said Lien is Instrument No. 201415964 as recorded in the Office of the Portage County Recorder. Said Lien is fictitious and totally false.

18. **Defendants further move to join as a party defendant(s) pursuant to Ohio Rules of Civil Procedure 19 and 19.1 the following parties;**

19. Westbend Mutual Insurance Company as insurer for Plaintiff, Brookstone/Burns, Dennis Miller Enterprises, Inc., Dennis Miller (individually) and Celina Group Insurance as insurer for Dennis Miller Enterprises, Inc.

    It is Defendant's belief that the additional party defendant, Westbend Mutual Insurance Company is a bonding company engaged by the Plaintiff Brookstone to insure the proper performance of the contract hereunder. Defendant Jones believes that there has been a shortfall in the performance of the work by Brookstone and as a result of that the liability of the bonding company will come into play. Defendants further will insure

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

10

that the additionally named parties shall be served pursuant to Ohio Rules of Civil Procedure Rule 4 through 4.6.

20. Pursuant to the contract, a septic system was to be in place on the Defendant's property located at 4134 Rock Spring Road, Ravenna, Ohio. The Plaintiff, improperly removed the existing septic system and engaged Dennis Miller Enterpises to replace the septic system. Dennis Miller Enterprises began the replacement of the septic system and then stopped work on the project. It is the belief of the Defendants herein that the work that had been done was improperly done and further, the work was never completed leaving the defendants without a septic system for their home. Defendants further will insure that the additionally named parties shall be served pursuant to Ohio Rules of Civil Procedure Rule 4 through 4.6.

21. It is the belief of the Defendants that Celina Group Insurance is the bonding company that was engaged by Dennis Miller Enterprises to insure the proper performance of the work that he undertook on Defendant's property. Therefore, the bonding company does have a liability based upon the failure of Dennis Miller Enterprises to complete the project and the installation of the septic system. Defendants further will insure that the additionally named parties shall be served pursuant to Ohio Rules of Civil Procedure Rule 4 through 4.6.

## BREACH OF IMPLIED WARRANTY

Defendants, Howard Jones and Vicky Jones incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

FRANK J. CIMINO
ATTORNEY AT LAW

50 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

22. Plaintiff Brookstone/Burns provided an implied warranty to Defendants that they would perform the subject work with workmanlike skill.

23. Plaintiff Brookstone/Burns breached their implied warranties to Defendants when they failed to perform the subject work with workmanlike skill.

24. As a direct result of such breaches, Defendants sustained damages in the amount in excess of $25,000.00 including liquidated damages, attorney fees and costs, and for such relief as this Court shall deem just and equitable.

## BREACH OF EXPRESS WARRANTY

25. Defendants incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

26. Plaintiff Brookstone/Burns expressly warranted to Defendants in the contract that they would furnish all materials and labor necessary to perform the subject work. Plaintiff, Brookstone/Burns further expressly provided in the contract for various warranties.

27. The subject work was not performed in conformance with the contract. Moreover, many work items were not performed or were performed incorrectly by Plaintiff Brookstone/Burns.

28. Plaintiff Brookstone/Burns has breached their express warranties to Defendants.

29. As a direct result of such breaches, Defendants sustained in an amount in excess of $25,000.00, including liquidated damages, attorney fees and costs, and for such relief as this Court shall deem just and equitable.

**FRANK J. CIMINO**
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

## UNJUST ENRICHMENT

30. Defendants incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

31. Plaintiff Brookstone/Burns received the benefit of payment for performance of the subject matter.

32. Plaintiff Brookstone/Burns has been unjustly enriched at the expense of Defendants in an amount to be determined, plus other such interest, costs and attorney fees as may be permitted by law.

33. Defendant Brookstone/Burns have been unjustly enriched at the expense of Defendants, Howard & Vicky Jones, in an amount to be determined, plus other such interest, costs and attorney fees as may be permitted by law.

## FRAUD

34. Defendants incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

35. Plaintiff Brookstone/Burns by and through its agents, made false representations of existing facts concerning their performance of the subject work.

36. Plaintiff Brookstone/Burns had knowledge of their performance of the subject work and made representations with knowledge of the falsity of said representations or with reckless disregard as to the truth of said representations.

37. Plaintiff Brookstone/Burns knew the failure to disclose material facts regarding the subject matter of this complaint would and did create a false impression about their competency.

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

38. Plaintiff Brookstone/Burns acted with the intention of deceiving Defendants as to Plaintif Brookstone/Burns's true capabilities, with the intention of inducing Defendants to rely on the false relationship and non-disclosures.

39. Defendants relied on such false representation and non-disclosures in entering into business relations with Plaintiff Brookstone/Burns and during said business relationship.

40. Defendants' reliance was justified.

41. As a direct result of such false and fraudulent disclosures, Defendants sustained damages in an amount in excess of $25,000.00, including liquidated damages, attorney fees and for such relief as this Court shall deem just and equitable.

42. The conduct of the Plaintiff Brookstone/Burns was willful, wanton, malicious, oppressive, gross, egregious, and evidence of reckless disregard for the rights and safety of Defendants. As such, Defendants are entitled to punitive damages.

## FRAUD IN THE INDUCEMENT

43. Defendants incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

44. Plaintiff Brookstone/ by and through its agents, made false representations of existing facts concerning their performance of the subject work.

45. Plaintiff Brookstone/Burns had knowledge of their performance of the subject work and made presentations with knowledge of the falsity of said representations or with reckless disregard as the truth of said representations.

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

46. Plaintiff Brookstone/Burns knew the failure to disclose material facts regarding the subject matter of this complaint would and did create a false impression about their competency of the work.

47. Plaintiff Brookstone/Burns acted with the intention of deceiving Defendants as to Plaintiff Brookstone/Burns true capabilities, with the intention of inducing Defendants to rely on the false representation and non-disclosures.

48. Defendants relied on such false representations and non-disclosures in entering into business relationship with the Plaintiff Brookstone/Burns and during said business relationship.

49. Defendants' reliance was justified.

50. As a direct result of such false and fraudulent disclosures, Defendants sustained damages in an amount in excess of $25,000.00, including liquidated damages, attorney fees and for such relief as this Court shall deem just and equitable.

51. The conduct of Plaintiff Brookstone/Burns was willful, wanton, malicious, oppressive, gross, egregious, and evidence of reckless disregard for the rights and safety of Defendants. As such, Defendants are entitled to punitive damages.

## OHIO DECEPTIVE TRADE PRACTICES ACT

52. Defendants incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

**FRANK J. CIMINO**
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7576 Fax

53. Plaintiff Brookstone/Burns are the entities who engaged in deceptive trade practices as defined by the Ohio Deceptive Trade Practices Act, Ohio Revised Code §4164.01 *et seq.* 31.

54. Plaintiff Brookstone/Burns violated the Ohio Deceptive Trade Practices Act by representing that materials and labor provided in performing the subject work were of standard quality, and that services provided in the work for Defendants were provided in a professional, competent, and workmanlike manner.

55. As a direct result of such false and fraudulent disclosures, Defendants sustained damages in an amount in excess of $25,000.00, including liquidated damages, attorney fees and for such relief as this Court shall deem just and equitable.

## OHIO CONSUMER SALES PRACTICES ACT

56. Defendants incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

57. Plaintiff Brookstone/Burns are suppliers as defined by the Ohio Consumer Sales Practice Act, Ohio Revised Code §1345.01 *et seq.*

58. Defendants are consumers as defined by the Act.

59. Plaintiff Brookstone/Burns services to Defendants constituted a "consumer transaction" as defined by the Act.

60. Plaintiff Brookstone/Burns conduct and actions with respect to the self-promotion prior to entering into the contract, as well as the un-workmanlike practices, constitute unfair and deceptive practices under the Act.

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

61. The aforementioned damages sustained by Defendants were caused by violations of the Act by the Plaintiff Brookstone/Burns their agent and/or employees and/or servants.

62. As a direct result of such false and fraudulent deception, Defendants sustained damages in excess of $25,000.00, including liquidated damages, attorney fees and costs, and for such relief as this Court shall deem just and equitable.

63. The conduct of the Plaintiff Brookstone/Burns was willful, wanton, malicious, egregious, and evidence of ruthless disregard for the rights and safety of Defendants. As such, Defendants are entitled to punitive damages.

64. The Defendants are also entitled to **Treble Damages** as a result of Plaintiff Brookstone/Burns violation of the Act and the OAC.

## NEGLIGENT HIRING

65. Defendants incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

66. Plaintiff Brookstone/Burns owed a duty to employ employees to perform their respective jobs in a competent and professional manner.

67. Plaintiff Brookstone/Burns breached their duties to Defendants when they employed persons who failed to competently perform their work.

68. As a direct result of such negligent hiring, Defendants sustained damages in an amount in excess of $25,000.00, including liquidated damages, attorney fees and costs, and for such relief as this Court shall deem just and equitable.

FRANK J. CIMINO
ATTORNEY AT LAW

50 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

17

## NEGLIGENT SUPERVISION

69. Defendants incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

70. Plaintiff Brookstone/Burns was the supervisor of various individuals and companies who performed the subject job duties.

71. Plaintiff Brookstone/Burns had a duty to supervise those individuals and companies with ordinary care.

72. Plaintiff Brookstone/Burns negligently and/or recklessly supervised their employees.

73. As a direct result of such negligent supervision, Defendants sustained damages in an amount in excess of $25,000.00, including liquidated damages, attorney fees and costs, and for such relief as this Court shall deem just and equitable.

## BREACH OF CONTRACT

74. Defendants incorporate the allegations set forth in the proceeding paragraphs as though fully set forth herein.

75. Defendants entered into a contract with Plaintiff Brookstone/Burns, a copy of which is attached to the Complaint of the Plaintiff, and marked as Exhibits (B) and (C).

76. Plaintiff, Brookstone/Burns breached said contract by the following, but not limited to: not properly completing the work or otherwise not performing the work with workmanlike skill and otherwise using defective or improper materials and labor, and otherwise breaching said contract.

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

77. As a direct result of such breach of contract, Defendants sustained damages in an amount in excess of $25,000.00, including liquidated damages, attorney fees and costs, and for such relief as this Court shall deem just and equitable.

78. As a direct result of the aforesaid breach of contract, Defendants have suffered and sustained severe emotional distress.

Defendants, by and through the undersigned counsel, give notice to this Court that a trial by jury is hereby demanded on all issues triable by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants, Howard Jones and Vicki Jones, demand judgment in favor of Defendants and against Plaintiff Brookstone/Burns and Dennis Miller Enterprises/Dennis Miller as follows:

1. A sum in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00) for each count of action, and for costs expended herein and all applicable interest as allowed by law; and

2. Punitive damages against Plaintiff Brookstone/Burns in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00), and such other and further relief as this Court deems just and proper; and

3. Enter judgment against Plaintiff Brookstone/Burns for treble damages, attorney fees and costs for violation of the Ohio Consumer Sales Practice Act and the Ohio Deceptive Trade Practices Act; and

4. Enter judgment against Plaintiff Brookstone/Burns for serious emotional distress; and

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

19

5.    Award to Defendants such other and further relief as this Court deems just, fair and equitable.

6.    Award to Defendants against Dennis Miller Enterprises/Dennis Miller, in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00) for each count of action, and for costs expended herein and all applicable interest as allowed by law; and

7.    Punitive damages against Dennis Miller Enterprises, Inc/Dennis Miller in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00), and such other and further relief as this Court deems just and proper; and

8.    Enter judgment against Dennis Miller Enterprises, Inc/Dennis Miller for treble damages, attorney fees and costs for violation of the Ohio Consumer Sales Practice Act and the Ohio Deceptive Trade Practices Act; and

9.    Enter judgment against Dennis Miller Enterprises/Dennis Miller for serious emotional distress; and

10.    That Defendant HSBC Mortgages Services turn over to Defendants, Howard Jones and Vicki Jones the balance of funds now held by them in the account for this project.

Respectfully submitted,

Frank J. Cimino   #0007323
250 South Chestnut Street, Suite #18
Ravenna, Ohio  44266
(330) 297-5788   fax (330) 297-7578
Attorney for Howard & Vicki Jones
officef3@sbcglobal.net

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

20

## JURY DEMAND

Now comes the Defendants, by and through the undersigned counsel, and gives notice to this Court that a trial by jury is hereby demanded on all issues triable by law.

Respectfully submitted,

Frank J. Cimino (#0007323)
250 South Chestnut Street, Suite 18
Ravenna, Ohio 44266
330.297.5788
330.297.7578 FAX
Attorney for Defendants Howard & Vicki Jones

FRANK J. CIMINO
ATTORNEY AT LAW

250 S. CHESTNUT ST.
SUITE 18
RAVENNA, OHIO

330-297-5788
330-297-7578 Fax

Jones copy



## BROOKSTONE
### GENERAL CONTRACTORS INC.
*By Design*

*PO Box 1805*
*Kent, Ohio 44240*
*phone: 330-678-0299 fax: 330-678-8299*

## FAX

HSBC Mortgage Services
Loss Draft Dept 506
2405 Commerce Ave.
Duluth, Ga 30096

Date: 2/3/14

To: Latosha
    phone 1-866-567-4029                From: Terri

Fax: 678-459-9191                       Phone: 330-554-1615

     HSBC
Re: 0013464094                          CC: 13 pages (including Cover)
Howard & Vicky Jones

*COMMENTS:

the endorsed check is being sent by
Certified Mail.

Please call me if you have any questions

Thank You,
Terri Cope



EXHIBIT
A

P.O. Box 1805 • Kent, Ohio 44240 • Office 330-678-0299 • Fax 330-678-8299

# Replacement Cost Coverage

Insured: **JONES**
Claim Number: **305619421**
Loss Date: **11/8/2013**

Allstate Insurance Company
P.O. Box 3916
Youngstown, Ohio 44512
**Adjuster: Thomas D. Jones**
1-888-656-8005 ext 1947173

HSBC 13464094

Howard

Thank you for allowing us to spend time with you regarding your recent claim. As we discussed, your policy allows for replacement cost coverage.

The following summarizes the calculations we talked through:

1. The full cost of repair or replacement is...... $144,230.93

2. Less the applicable depreciation is.............. $38,713.42

3. The actual cash value of the loss is............. $105,517.51
   (line 1 minus line 2)

4. Tax...(included)......................................... $        -

5. Appearance allowance..................................................................

5. Less deductible........................................... $        -   OFF PERSONAL PROPERTY

6. Actual cash value claim is............................ $105,517.51

7. Recoverable depreciation within 180.          $38,713.42
   days

To recover an amount in excess of actual cash value, you must replace the damaged property within 180 days. You will be reimbursed the amount you spend in excess of the actual cash value amount up to the replacement cost as noted in the structure worksheet. Please send receipts indicating that the replacement has been completed within the 180 day period.

Please contact me at your earliest convenience if you have any questions regarding your claim.

Sincerely,

Thomas D. Jones



## HOME IMPROVEMENT AGREEMENT

**THIS AGREEMENT** is made at 5228 Wayland Road 44412 effective, February 2, 2014 by and between **BROOKSTONE GENERAL CONTRACTORS BY DESIGN, INC..** (hereinafter the "Contractor"), and of Howard & Vicky Jones    hereinafter the "Owner" whether one or more.)

1. **CONSTRUCTION**:  Contractor shall furnish all labor, materials, equipment and supplies and do all things necessary for the construction, remodeling and/or home improvements for Owner located in the city/township/town of Ravenna Ohio , County of Portage and Street Address of 4134 Rock Spring Road, Ravenna, Ohio 44266 (hereinafter the "Residence"). in accordance with the provisions of this Agreement.

2. **SPECIFICATIONS**:  This Agreement governs the following construction, remodeling, and/or home improvements as identified below or as detailed in the Specifications dated February 2, 2014.

### Demolition of existing house

The existing home will be demoed down to the existing basement and hauled away. All of the mechanical connections should be disconnected by the appropriate suppliers. The homeowner will have to call and make all the arrangements necessary due to the fact that these mechanical are in the name of the homeowner.

### Foundation

The foundation of the home will have a full basement under the front portion of the home. The back portion of the basement will be a 4 foot crawl space. This pace runs parallel with the attached garage. The basement will have a concrete floor and the crawl space will have crawl space as well. The basement will be 11 to 12 courses and will be sitting on concrete foots 12" x 16". Footer drains will be installed aournd the foundation as well as a sump pump. The basement will have a total of 4 glass block windows with vents two in the front of the home and one on each side of the basement. The exterior basement walls will have a coat of plaster and two coats of tar to ensure that the basement will be dry. There will be a wood beam used down the center of the home in order to support the floor joist. Underneath the wood beam will be 4" steel post to support the beam.

### Framing of Home

The home will be a ranch style home with 8` foot ceilings. The walls will be framed in with 2x4 stick framed construction. There will be a full set of working blue prints provided to the homeowner. The home will be framed in according to the blue prints. The roof line will consist of a 5/12 pitch roof.

### Mechanicals of the home.



**EXHIBIT**

tabbies'

**B**

# *BROOKSTONE GENERAL CONTRACTORS BY DESIGN, INC.*

The homes mechanicals will be all installed according to the local building codes. The plumbing being used will be ABS pipe. The drain lines for the home will be connected into the existing septic system. If the septic system needs to be updated the homeowner and contractor will discuss a new system and write up a change order with a price to install the new septic system. The heating system for the home will be a heat pump with a backup electric furnace. The furnace more than likely will be a Goodman or Amana brand furnace.

## Drywall

The drywall for the project will be half in on all the interior walls. The ceilings will have 5/8 inch drywall on them. The finish on the drywall will be three coats of drywall compound of the walls and the ceilings will have a knock down texture on them. All closets and panty's will have a rolled texted on the walls. The drywall will be mudded sanded and one coat of primer on them.

## Windows

The windows will be made by Vista Window Company a pamphlet will be provided to the homeowner. The windows will be a vinyl double hung window without grids. These windows will be tilt in window for easy cleaning and the homeowner may choose a full screen or half screen. The window will be white in color. These windows come with a Lifetime owner occupied single family home.

## Siding/Roof

The siding for the job will be from Kaycan Ltd. The siding will be double four Dutch lap siding or straight lap 4" siding. A sample of the siding colors will be given to the homeowner so that they may choose the color desired. All of the exterior fascia will have a white bent aluminum trim coil on the faces. A dimensional 30 year shingle will be used. Pinnacle is the brand of shingles from modern builders that Brookstone uses. Also a sample board will be given to the homeowner so they may match up the siding and shingle color together.

## Trim Package

The trim in the home will be a white pre primed colonial trim package. The windows will not have drywall returns the windows will have 1x4 wood around the inner window and colonial pre primed white trim around the outside interior edge. The interior doors will be a two panel pre hung door that the homeowner has already picked out. These doors have a beaded look on the interior panel both top and bottom. The door hardware will be either a chrome or gold finish on it. Gold is what the doors normal come with on the hinges.

## Kitchen

The kitchen cabinets for the home will be according to the layout provided on the print and a final layout from the kitchen designer. The kitchen cabinet maker will be Shenandoah cabinetry from Lowes Home improvement stores. The counter top can be a Formica counter top if desired or a Granite counter top level B granite. The sink will be a stainless steel sink with an allowance of $200.00 dollars the kitchen faucet will have an allowance of $150.00. The appliance for the kitchen will be purchase by the homeowner. The appliance that where lost in the fire where paid out separately in the loss and are not included in the price of this contract. The installation of the appliances are also a separate cost to the homeowner but usually where purchased they can be set up for delivery and set up. The homeowners will be able to select their colors for their kitchen at Lowes.

## Bathrooms

The bathrooms in this project will be just your standard bathrooms with the exception of the master bathroom. The main bathroom located in-between the two bedroom will have a 30" to 36" white or oak cabinet with draws on the right side. The top will be a standard while cultured marbled top. The sink faucet and tub/shower combo faucet will be chrome either delta or moen brand faucets. The floor in the bathroom will be a one piece vinyl flooring. The toilet will be a white in color comfort height elongated or round whichever the homeowner prefers. The master bathroom will have a five foot wide standard height shower.

## BROOKSTONE GENERAL CONTRACTORS BY DESIGN, INC.

The shower will have twelve by twelve tile with an allowance of $3.00 per square foot. Somewhere about midway up the wall or more towards the top of the shower there will be a sheet in lay that the homeowner has shown the contractor. Nothing specific will be written in the contract. This way if the homeowner changes his mind and pics something different then he can however an allowance of $3.50 dollars for a single sheet which is 12x12 inches should be used as a guide line when selecting and in lay. Brookstone highly recommends a five foot fiberglass shower pan 32" inches deep which is deeper than a tub instead of a tile shower floor. Brookstone has been using these a lot more due to the fact that they are less maintenance and they don't leak.

### Floor Coverings

The floor coverings are as follows. Kitchen area tile/ allowance $3.50.00. Dining room area tile/allowance $3.50. Bedrooms carpet. Living room carpet. Hallway leading from back door tile/allowance $3.50.

### Miscellaneous Items

This project is an insurance job due to fire loss. This home had to be brought up to code and has a clause in the policy to allow $100 dollars per square foot to bring the home up to current codes. These codes are according to the Portage County Building department. This means that the insurance company will also be adding $11,000.00 dollars in additional funds to its Replacement Cost Coverage page of the loss break down. Also if the septic system is in need of replacement then there is verbiage in the policy of up to $15,000.00 dollars towards updating the septic system. The septic system would be written up as a change order the bringing up to today's codes and standards is included in the price of the contract. Brookstone G.C. By Design Inc. will follow the draw schedule provided by the Mortgage Company and the inspection process that they have set up. Any overages or cost that the insurance company is not going to cover would become the responsibility of the homeowner to take care of. If it anything becomes and insurance issue then Brookstone will try and help resolve any issues. Any information based upon numbers and pricing that has been included in this contract has come directly from the homeowner and the insurance company. Brookstone G.C. By Design does not have a copy of the homeowner's insurance policy and is going off of information provided by the homeowner when coming up with the final price of construction for the home. Once again just so all parties are clear on how this project is being done. A set of prints will be given to the homeowner with all specification on it. This project will be completed to the building codes of portage county building department.

3.   **CONTRACT PRICE**:

(a)      Owner shall pay Contractor the amount of $155,230.93    (hereinafter the "Contract Price"), in accordance with the provisions of this Agreement. (Subject to adjustment by any Change Order(s).)

(b)  Owner has deposited earnest money with Contractor in the sum of 30% of the contract shall be the be given to Brookstone G.C. By Design Inc.and this shall be applied toward payment of the Contract Price.

Draw schedule as follows:

**30% , 30%, 30%, and 10% at completion.**
          **HSBC sends Brookstone G.C. By Design Inc. 30% of funds to get started on the job and then progress payments after contractor request draw and Safeguard Properties a national inspection services comes to inspect. Brookstone G.C. By Design and the homeowners have already agreed that they will sign a letter stating the draw checks can be made directly to the Contractor and not both the contractor and the homeowner.**

(c)    If Owner is not financing the construction. Owner shall pay Contractor the amount of $_____N\A_____. in equal monthly installments for a period of _N\A____ months, due and payable on the ___N\A_____ of each month. Owner shall pay interest in the amount of two percent (2%) per month for any amount not timely paid to Contractor.

(d)    Owner shall pay Contractor the amount of $_N\A___, which shall equal Contractor's Final Payment as specified in Paragraph 4 below. This amount may. however, be subject to adjustment by any Change Order(s).

(e)    If Owner shall obtain any construction financing for the Residence. Owner shall sign all vouchers, drafts or bank checks representing draws within twenty-four (24) hours after the funds have been approved for release by Owner's lending institution. Owner acknowledges that Owner's delay in signing any bank documents or in making timely payment(s) shall be grounds for Contractor to stop work. which work Contractor shall not recommence until Owner has promptly and properly executed all requisite bank documents and the funds have been appropriately released to Contractor. If Owner fails to execute a requisite draw form. Contractor may present to the Lender such draw request and promptly receive payment without Owner's consent or authorization. Neither Lender nor Contractor shall thereafter have any liability for the release of such draw.

(f)    If Owner shall personally finance all or any part of the construction of the Residence, then prior to Contractor's commencement of construction. Owner shall deposit with N\A, (hereinafter the "Escrow Agent"). the portion of the Contract Price being personally financed by Owner. Escrow Agent shall hold the deposited portion of the Contract Price in a passbook savings interest-bearing account under Owner's social security number. Owner shall be entitled to all interest earned on such sum and shall satisfy Escrow Agent's fee for escrow services.

(g)    If any payment is not timely made and Contractor is required to retain legal counsel to pursue collection. Owner hereby agrees to pay the attorney's fees and costs for Contractor's legal counsel.

(h)    Should Owner fail to make any payment when due. Contractor may immediately stop work until full payment is made.

4.    **FINAL PAYMENT**: Final payment shall be due and payable to Contractor upon Contractor's substantial completion of the work. Purchaser agrees to make full payment of the balance of the contract price within three (3) days of the date of such completion. In the event the Purchaser fails or refuses to pay the contract price or any part thereof as provided herein. Purchaser shall pay a charge of twenty-four percent (24%) per year on the unpaid balance from the date of Purchaser's failure to pay. All monies previously paid by the Purchaser shall be retained by the Contractor and applied to such charge which shall in no way prejudice the rights of the Contractor in any action for damages or specific performance. Purchaser shall not occupy the improved parts of the Residence until any requisite certificate of occupancy is issued by the appropriate governmental agency. Should Purchaser impermissibly occupy the Residence prior to the issuance of any such certificate. then Purchaser shall save and hold harmless Contractor for all fines. penalties. liabilities and/or expenses (inclusive of reasonable attorney's fees) imposed by any governmental agency or otherwise incurred by Contractor as a result thereof.

5.    **CHANGE ORDERS**: Owner may from time to time: (a) make changes to the Specifications; (b) issue additional instructions: and/or. (c) require additional work or direct the omission of work previously ordered (hereinafter the "Change Order(s)"). The Owner shall be responsible to pay for any and all Change Orders authorized by Owner. Change Orders may be oral or in writing. Contractor shall not be obligated to secure a written Change Order from the Owner before doing the work but shall subsequently provide the Owner

with the approximate and/or actual cost for the Change Order. Owner shall pay the Contractor for all Change Order work on a cost plus 20% basis. Payment shall be made within seven (7) days of receipt of the invoices from the Contractor documenting the Change Order work.

6. **SUBSTITUTIONS**: Should Contractor be unable to obtain any material(s) specified in any of the Specifications or Change Order(s), Contractor shall have the right to substitute comparable materials and such substitution shall not effect the Contract Price.

7. **INSURANCE**: Contractor shall obtain public liability insurance in a reasonable sum during the progress of the construction and shall also maintain insurance required under the Workmen's Compensation and other laws of the State of Ohio.

Contractor shall not be responsible for any loss due to fire, vandalism, weather or theft of any materials once delivered to the job site. Owner shall assume all responsibility for any such loss and Owner shall maintain insurance coverage to protect against the same. Owner waives any rights or claims Owner may have against Contractor for any personal injuries and/or property damages incurred by anyone on the property during the period of construction, and shall indemnify, defend and hold Contractor harmless from any claims asserted for such alleged injuries and/or damages. Contractor shall be named as a co-insured upon Owner's aforesaid insurance policy. Owner shall provide Contractor with evidence of the requisite insurance upon Owner's execution of this Agreement.

Contractor shall procure any and all necessary permits. The Contractor with regards to this contract will not pull or be responsible for obtaining any building permits what so ever. The Contractor during the performance of construction shall conform to all laws and ordinances which may be applicable thereto. Should the cost of any permit(s) increase over and above the price established at the time of the execution of this Agreement, Owner shall pay the increased cost of obtaining such permit(s) in addition to procuring any and all necessary permits.

8. **ALLOWANCES**: Owner shall pay any and all costs in excess of the allowances set forth in this Agreement. Owner shall pay all such costs to Contractor and shall additionally provide Contractor with written authorization and consent in form and substance satisfactory to Contractor before Contractor shall order the material and/or commence with labor relating to work/ improvements for which costs exceed allowance(s). Owner shall not be charged an additional charge by Contractor for handling unless Owner's total charges for allowance items exceed twenty percent (20%) of the amount of the Owner allowances set forth herein. In the event that Owner's total cost for all allowance items exceed twenty percent (20%) of that amount then Owner shall pay Contractor a sum equal to fifteen percent (15%) of the amount in excess of the allowance amount. Owner acknowledges that such allowances are for both labor and material for each such allowance item.

9. **SITE PREPARATION**: Owner assumes sole responsibility for the compliance with set back and property use restrictions and location of the structures on the premises and shall indemnify and hold Contractor harmless for any and all damages and attorney fees arising there from. Owner acknowledges that if it becomes necessary to remove trees from the premises as part of the construction process, Owner shall be responsible for the cost of tree removal. All site preparation is to be handled by Owner unless stated otherwise in the SPECIFICATIONS. Owner agrees that if the site requires any excess excavation and/or wider footers or other additional work is required as a result of site conditions, Owner shall pay such additional cost upon invoicing from Contractor.

10.   **GRADING/LANDSCAPING**:  Owner shall be responsible for grading, including but not limited to, the finished grading, seeding, sodding, landscaping, and planting of trees unless stated otherwise in the SPECIFICATIONS.

Any and all additional expense incurred during excavation due to rock or sandstone, muck, peat, loosely filled soil, underground water, sifting sand, or any unstable material, are not included in the Contract Price. Contractor has not and shall not conduct any soil studies or sampling at the premises and Owner, and not Contractor, shall be solely responsible for any construction defects or problems which relate to or arise from any problematic soil conditions. Owner shall conduct any soil testing and/or seek consultation with respect to soil conditions as Owner may desire.  Additional labor and/or material made necessary by reason of deficiencies in soil conditions requiring extra footing, reinforcing, piers, concrete block, concrete walls shall be paid by the Owner in addition to the Contract Price. Owner shall pay Contractor additional charges based on actual cost of labor and materials plus 20%.

11.   **EXCESS FILL DIRT**:  In addition to the Contract Price, Owner shall be responsible for the expense of hauling fill dirt or other material, if necessary, to the premises and for hauling dirt or other materials away from the premises. Owner shall pay Contractor the additional charges based on actual cost of labor and material plus 15%.

12.   **OWNER'S DEFAULT**:  Owner represents that Owner is ready, willing and able to carry out the terms, provisions and conditions of this Agreement. Owner's refusal to fully and timely perform any of the terms of this Agreement shall result in Contractor, at Contractor's election, declaring this Agreement null and void, and Contractor shall have the right to bring any and all legal and/or equitable actions against Owner in conformity with Ohio law.  Contractor shall additionally be entitled to retain Owner's deposit and recover all costs, losses, lost profits, damages and expenses incurred; including, but not limited to reasonable attorney's fees in the event of Owner's default.

13.   **SUPERVISION**:  Owner agrees that the direction and supervision of Contractor's working forces, including subcontractors, rest exclusively with Contractor. Owner shall not interfere with Contractor's working forces or subcontractors. Owner is not permitted, during this Contract; to perform any work at the Residence, or permit an agent that owner may hire, to perform any work at the Residence unless Owner receives the prior written consent of Contractor.

14.   **COMMENCEMENT/COMPLETION**:  Contractor shall commence with construction hereunder on or about_____. The job should take_____ to complete weather permitting and shall proceed diligently to complete the work.  Contractor shall not be responsible for any delays to construction caused by Owner, Owner's agents, Acts of God, payment disputes, change orders, lender interference, weather conditions, soil conditions, strikes, material shortages, shipment delays, production delays, and/or any other matters or conditions beyond Contractor's reasonable control.

15.   **CONTRACTOR'S WARRANTY AND LIMITATIONS**: Contractor shall provide Owner with a one (1) year limited warranty following the date upon which Owner takes possession of the Residence Improvement against defects in the quality of workmanship and materials. Contractor shall not be liable for any manufacturer's warranty for any and all appliances and equipment provided with and/or installed at the Residence; including, without limitation, any refrigerator, range, space heater, hot water heater, garbage disposal, ventilating fans, air conditioners, heating units, etc.  Owner hereby releases Contractor from any and all liability from and after the one-year warranty period.  Owner shall hold Contractor harmless from and after the expiration of the one-year warranty period from any and all claims, demands, actions or causes of actions brought by third-party suppliers, subcontractors, manufacturers and/or any other third party.

# *BROOKSTONE GENERAL CONTRACTORS BY DESIGN, INC.*

At all times during construction and on the eleven month anniversary of the walk-through or move-in, whichever is earlier, should Owner discover any defect in construction or material, then Owner shall prepare and provide Contractor with written lists, signed and dated by Owner (copy attached to Limited Warranty), specifically identifying items that need repaired or completed. Owner shall provide Contractor with a reasonable time to repair and complete these items, which should not be less than thirty (30) days. IT IS THE SOLE RESPONSIBILITY OF OWNER TO SUBMIT THE LIST PROVIDED ON THE LAST PAGE OF THE WARRANTY AT THE ELEVEN MONTH ANNIVERSARY OF THE MOVE-IN OR WALK-THROUGH, WHICHEVER IS EARLIER. FAILURE BY OWNER TO SUBMIT THIS FINAL LIST FOR APPROVAL TO CONTRACTOR PRIOR TO THE ELEVEN MONTH ANNIVERSARY FORFEITS THE RIGHT OF OWNER TO HAVE THE APPROVED WARRANTY WORK PERFORMED.

Contractor shall not be responsible for any: (a) damage due to ordinary wear and tear or abusive use, (b) defects that are the result of characteristics common to the materials used, (c) loss, injury or damages caused in any way by the weather or elements, (d) conditions resulting from condensation on, or expansion or contraction of, any materials, or (e) paint over newly-textured interior walls.

Contractor's warranties are not transferable and shall terminate upon Owner's resale or transfer of the Residence.

This warranty is in lieu of all other warranties, statutory or otherwise, express or implied, all the representations made by Contractor and all other obligations or liabilities respecting the Residence. Owner agrees that Owner must commence any and/or all claims which Owner may have against Contractor within a one (1) year period from and after the date upon which Owner takes possession of the Residence or Owner shall otherwise be forever barred from instituting any cause of action there for.

16. **PERSONAL PROPERTY**: Any and all personal property of Owner that is in or near a work area is the responsibility of such Owner and Contractor is not responsible for any damage to or the monetary or replacement value of said personal property, and agrees to indemnify, defend and hold Contractor harmless from any claims related to stolen, damaged or destroyed personal property.

17. **INDEMNIFICATION**: Owner shall hold Contractor harmless and indemnify Contractor for any and all claims, actions, damages, or other liability, including, without limitation, attorney fees, professional witness fees, court costs, and other charges, arising out of or related to Owner's breach of any term or condition contained in this agreement.

18. **EXCESS MATERIALS**: Any materials left over upon completion of the Residence shall be deemed to be Contractor's property. Contractor may enter upon the premises to remove excess material(s) at all reasonable hours.

19. **NO WAIVER**: The failure of Contractor to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and/or conditions of this Agreement, shall not be construed as thereafter waiving any such terms and/or conditions or future breach, but the same shall continue and remain in full force and effect as if no such forbearance had occurred.

20. **CONCRETE**: Cracks, chips, spalling, scaling and pitting in the concrete due to weather, salt damage, shrinkage, or any other cause are not the responsibility of Contractor.

21. **PAINTING**: Contractor should not be liable for cracks and other defects caused by the expansion and contraction of joints in the woodworking and trim resulting from seasonal changes in the weather.

# BROOKSTONE GENERAL CONTRACTORS BY DESIGN, INC.

22. __DEPOSIT__: The Owner has deposited with Contractor the sum of   , which the parties agree shall be held in escrow and applied on the purchase price when the transaction is closed; or, if the Contractor fails or refuses to perform the Contractor's part of this Contract, the Deposit shall be returned to Owner, as Owner's sole and exclusive remedy; or, if the Owner fails or refuses to perform the Owner's part of this contract, said deposit shall be retained by Contractor but such retention shall not in any way prejudice the rights of the Contractor in any action for damages or a suit for specific performance.

23. __CLEAN UP__: Contractor will leave the job broom clean each day and trash will be hauled away as needed (when a 10 yd. Truck may be filled). At the end of the project, all trash and materials not used on the job will be removed. Owner is responsible for final cleaning including, but not limited to, dusting, cleaning of fixtures, wiping and cleaning cabinets, floor sweeping or mopping, cleaning of any dust or dirt that may have blown through the house, cleaning or changing filters in the heating and cooling system, cleaning of the HVAC itself, windows, drapes, window treatments, etc. Contractor will make every effort to limit dust and debris to the work area, but by no means will it guarantee there will not be dirt or dust that may filter into those areas of the Residence where construction is not occurring.

24. __DUST AND DIRT CONTAINMENT__: Contractor will lay cloth tarps on floors from the entry place to the work place. Plastic dust walls will be hung if possible. 30 gallon trash containers will be on the job site for small debris. Contractor will make every effort to keep the job site clean; however, there are no warranties or guarantees provided as to dust/dirt. Any additional requests by Owner, such as covering any furniture or removing furnish or accessories must be put in writing and made part of this Agreement and will be charged for accordingly.

25. __PHONE__: Owner agrees to allow reasonable phone access to Contractor to make and receive local calls.

26. __LAVATORY__: Owner agrees to provide a lavatory designated for use by Contractor's employees and its sub-contractors for the duration of construction. If not provided, Contractor will provide a Porta-John at Owner's expense. Price will be based on a local supplier and paid directly to the supplier by the Owner.

27. __LUNCH AREA__: If workers are to eat at the Residence and Owner wishes them to eat in a particular spot, Owner must designate that location in writing before construction begins.

28. __PARKING__: Parking of vehicles will be in Owner's drive or in front of Owner's Residence. It is Owner's responsibility to provide neighbors with notice of any inconvenience.

29. __MATERIALS/EQUIPMENT__: It is the Owner's responsibility to provide a location, such as a garage, for materials, equipment that needs to be stored on site.

30. __SIGNS__: Owner agrees to allow Contractor to place a sign from Contractor on Owner's Premises. No other sign will be permitted during construction and for a period of 60 days following completion of construction (with the exception of a real estate sign).

31. __ACCESS TO RESIDENCE__: There must be a door or doors provided for entry to the Residence. A key or a house sitter must be provided Monday through Friday 8 a.m. to 5 p.m. and Saturdays by the request of Contractor. If a key is provided, the only people that will have access to it will be the Contractor's foreman and Contractor's sales person. If construction is delayed due to no access, Owner will be assessed a fee of $29.00 per hour per man until access is provided.

32. __DRIVEWAY/SIDEWALKS/ACCESS__: Owner hereby expressly and unconditionally allows Contractor and its material men and subcontractors, the right to drive over driveways and sidewalks with their trucks, backhoe, concrete trucks, delivery trucks, etc. Unfortunately, this may result in cracks or other damage. If this does occur, Contractor will have it repaired at Owner's expense. Contractor does not

guarantee/warranty against cracks and/or other defects. In the event these conditions do occur, the repair will be done as a change order to the Contract. If access to a Residence involves crossing over (or partially crossing over) another property, it is the Owner's responsibility to obtain written permission from the Property owner to allow for such access. Owner hereby agrees to pay for any grounds or landscaping repairs that may be needed, and agrees to indemnify, defend and hold Contractor harmless from any claims that may be asserted by such property owner.

33. **LANDSCAPING AND DRAINAGE**: It is the Owner's responsibility to make all yard repairs and underground drainage repairs, if necessary. All trees, shrubs, flowers and/or landscaping that are to be moved are the responsibility of the Owner. Contractor may move them with a backhoe but takes no responsibility for damage or death to the plantings. Contractor will rough grade the area being worked. All other landscaping and finish grading must be in writing and noted in the Specifications. Owner agrees that Contractor will not be responsible/liable in any manner whatsoever for the damage and/or death to any plantings or landscaping.

34. **LEAD BASED PAINT DISCLOSURE**: Owner hereby acknowledges receipt and review of the pamphlet "Protect Your Family From Lead In Your Home". Alternatively, Owner hereby acknowledges that Owner's Residence was constructed after January 1, 1978. Initials _____    _____

35. **MODIFICATION**: Any modification of this Agreement other than as specified herein and/or any Contract Documents shall be binding only if evidenced in writing signed by both Owner and Contractor or an authorized representative of either.

36. **ENTIRE AGREEMENT**: This Agreement shall constitute the entire agreement and understanding between Owner and Contractor and any prior understandings or representations of any kind preceding the date of this Agreement shall not be binding upon either party except to the extent the same is/are incorporated within this Agreement.

Contractor and Owner acknowledge that there are no covenants, representations, warranties, agreements, or conditions, either expressed or implied, which in any way affect, or are a part of, or relate to this Agreement, except for those expressly set forth herein above.

37. **OHIO LAW**: This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

OWNERS:                                          **BOOKSTONE GENERAL CONTRACTORS BY DESIGN, INC.**

_Howard L. Jones_ (signature)
(Signature)                                      By: _Brook Stone GC 2014  James Bruns President_

Dated: _2-2-14_                                  Dated: _February 2, 2014_

_Vicky Jones_ (signature)
(Signature)

Dated: _2-2-14_

*Addition Work Authorization Form*



HSBC 134604094

February 2, 2014

Howard L. Jones Jr
Vicky L. Jones

Re: Draw checks

This is a letter stating that Howard & Vicky Jones are in Agreement with Brookstone G.C. By Design Inc. that the draw checks coming to Brookstone G.C. By Design Inc. are to made out to the contractor only that HSBC may disburse funds without the checks being made out to both parties.

Howard L Jones Jr. _Howard L Jones Jr_ Date: 2-2-14

Vicky Jones _Vicky Jones_ Date: 2-2-14

Brookstone G.C. By Design Inc.
_[signature]_ Date: 2-2-14





## HOME IMPROVEMENT AGREEMENT

**THIS AGREEMENT** is made at 5228 Wayland Road 44412 effective, February 2, 2014 by and between **BROOKSTONE GENERAL CONTRACTORS BY DESIGN, INC.**, (hereinafter the "Contractor"), and of Howard & Vicky Jones    hereinafter the "Owner" whether one or more.)

1. **CONSTRUCTION:** Contractor shall furnish all labor, materials, equipment and supplies and do all things necessary for the construction, remodeling and/or home improvements for Owner located in the city/township/town of Ravenna Ohio , County of Portage and Street Address of 4134 Rock Spring Road, Ravenna, Ohio 44266 (hereinafter the "Residence"), in accordance with the provisions of this Agreement.

2. **SPECIFICATIONS:** This Agreement governs the following construction, remodeling, and/or home improvements as identified below or as detailed in the Specifications dated February 2, 2014.

### New Garage

Brookstone G.C. By Design will build a 24×24' pole style garage for the homeowner. This would be built in the behind the new home being built. It will have the same exterior finishes to match the new home being constructed. A concrete floor will be poured inside 4" think. There will be a 36" man door located where ever the homeowner desires. The inside will be left unfinished no drywall. One electric line will be run to the garage so it can have lights inside and a light by the man door. This power line will be a 20 amp circuit only. If this garage is built there will be no extra funds left over from the insurance many. The home and the garage are entirely more than the insurance company is allowing at this point. The homeowner was hoping to have extra funds left over if the garage isn't constructed then there will be $10,000.00 dollars to come back to the homeowner.

3. **CONTRACT PRICE:**

   (a)   Owner shall pay Contractor the amount of -0-   (hereinafter the "Contract Price"), in accordance with the provisions of this Agreement.  (Subject to adjustment by any Change Order(s).)

   (b) Owner has deposited earnest money with Contractor in the sum of. N/A



EXHIBIT

C

Draw schedule as follows:

**The price for the garage is included in the original home contact.**

(c)     If Owner is not financing the construction, Owner shall pay Contractor the amount of $\_\_\_\_N\A_____ , in equal monthly installments for a period of \_N\A\_\_\_\_ months, due and payable on the \_\_N\A_____ of each month. Owner shall pay interest in the amount of two percent (2%) per month for any amount not timely paid to Contractor.

(d)     Owner shall pay Contractor the amount of $\_N\A\_\_\_ , which shall equal Contractor's Final Payment as specified in Paragraph 4 below. This amount may, however, be subject to adjustment by any Change Order(s).

(e)     If Owner shall obtain any construction financing for the Residence, Owner shall sign all vouchers, drafts or bank checks representing draws within twenty-four (24) hours after the funds have been approved for release by Owner's lending institution. Owner acknowledges that Owner's delay in signing any bank documents or in making timely payment(s) shall be grounds for Contractor to stop work, which work Contractor shall not recommence until Owner has promptly and properly executed all requisite bank documents and the funds have been appropriately released to Contractor. If Owner fails to execute a requisite draw form, Contractor may present to the Lender such draw request and promptly receive payment without Owner's consent or authorization. Neither Lender nor Contractor shall thereafter have any liability for the release of such draw.

(f)     If Owner shall personally finance all or any part of the construction of the Residence, then prior to Contractor's commencement of construction, Owner shall deposit with N\A, (hereinafter the "Escrow Agent"), the portion of the Contract Price being personally financed by Owner. Escrow Agent shall hold the deposited portion of the Contract Price in a passbook savings interest-bearing account under Owner's social security number. Owner shall be entitled to all interest earned on such sum and shall satisfy Escrow Agent's fee for escrow services.

(g)     If any payment is not timely made and Contractor is required to retain legal counsel to pursue collection, Owner hereby agrees to pay the attorney's fees and costs for Contractor's legal counsel.

(h)     Should Owner fail to make any payment when due, Contractor may immediately stop work until full payment is made.

4.   **FINAL PAYMENT**: Final payment shall be due and payable to Contractor upon Contractor's substantial completion of the work. Purchaser agrees to make full payment of the balance of the contract price within three (3) days of the date of such completion. In the event the Purchaser fails or refuses to pay the contract price or any part thereof as provided herein, Purchaser shall pay a charge of twenty-four percent (24%) per year on the unpaid balance from the date of Purchaser's failure to pay. All monies previously paid by the Purchaser shall be retained by the Contractor and applied to such charge which shall in no way prejudice the rights of the Contractor in any action for damages or specific performance. Purchaser shall not occupy the improved parts of the Residence until any requisite certificate of occupancy is issued by the appropriate governmental agency. Should Purchaser impermissibly occupy the Residence prior to the issuance of any such certificate, then Purchaser shall save and hold harmless Contractor for all fines, penalties, liabilities and/or expenses (inclusive of reasonable attorney's fees) imposed by any governmental agency or otherwise incurred by Contractor as a result thereof.

5. **CHANGE ORDERS**: Owner may from time to time: (a) make changes to the Specifications; (b) issue additional instructions; and/or, (c) require additional work or direct the omission of work previously ordered (hereinafter the "Change Order(s)"). The Owner shall be responsible to pay for any and all Change Orders authorized by Owner. Change Orders may be oral or in writing. Contractor shall not be obligated to secure a written Change Order from the Owner before doing the work but shall subsequently provide the Owner with the approximate and/or actual cost for the Change Order. Owner shall pay the Contractor for all Change Order work on a cost plus 20% basis. Payment shall be made within seven (7) days of receipt of the invoices from the Contractor documenting the Change Order work.

6. **SUBSTITUTIONS**: Should Contractor be unable to obtain any material(s) specified in any of the Specifications or Change Order(s), Contractor shall have the right to substitute comparable materials and such substitution shall not effect the Contract Price.

7. **INSURANCE**: Contractor shall obtain public liability insurance in a reasonable sum during the progress of the construction and shall also maintain insurance required under the Workmen's Compensation and other laws of the State of Ohio.

Contractor shall not be responsible for any loss due to fire, vandalism, weather or theft of any materials once delivered to the job site. Owner shall assume all responsibility for any such loss and Owner shall maintain insurance coverage to protect against the same. Owner waives any rights or claims Owner may have against Contractor for any personal injuries and/or property damages incurred by anyone on the property during the period of construction, and shall indemnify, defend and hold Contractor harmless from any claims asserted for such alleged injuries and/or damages. Contractor shall be named as a co-insured upon Owner's aforesaid insurance policy. Owner shall provide Contractor with evidence of the requisite insurance upon Owner's execution of this Agreement.

Contractor shall procure any and all necessary permits. The Contractor with regards to this contract will not pull or be responsible for obtaining any building permits what so ever. The Contractor during the performance of construction shall conform to all laws and ordinances which may be applicable thereto. Should the cost of any permit(s) increase over and above the price established at the time of the execution of this Agreement, Owner shall pay the increased cost of obtaining such permit(s) in addition to procuring any and all necessary permits.

8. **ALLOWANCES**: Owner shall pay any and all costs in excess of the allowances set forth in this Agreement. Owner shall pay all such costs to Contractor and shall additionally provide Contractor with written authorization and consent in form and substance satisfactory to Contractor before Contractor shall order the material and/or commence with labor relating to work/ improvements for which costs exceed allowance(s). Owner shall not be charged an additional charge by Contractor for handling unless Owner's total charges for allowance items exceed twenty percent (20%) of the amount of the Owner allowances set forth herein. In the event that Owner's total cost for all allowance items exceed twenty percent (20%) of that amount then Owner shall pay Contractor a sum equal to fifteen percent (15%) of the amount in excess of the allowance amount. Owner acknowledges that such allowances are for both labor and material for each such allowance item.

9. **SITE PREPARATION**: Owner assumes sole responsibility for the compliance with set back and property use restrictions and location of the structures on the premises and shall indemnify and hold Contractor harmless for any and all damages and attorney fees arising there from. Owner acknowledges that if it becomes necessary to remove trees from the premises as part of the construction process, Owner shall be responsible for the cost of tree removal. All site preparation is to be handled by Owner unless stated otherwise in the SPECIFICATIONS. Owner agrees that if the site requires any excess excavation and/or

# BROOKSTONE GENERAL CONTRACTORS BY DESIGN, INC.

wider footers or other additional work is required as a result of site conditions, Owner shall pay such additional cost upon invoicing from Contractor.

10. **GRADING/LANDSCAPING**: Owner shall be responsible for grading, including but not limited to, the finished grading, seeding, sodding, landscaping, and planting of trees unless stated otherwise in the SPECIFICATIONS.

Any and all additional expense incurred during excavation due to rock or sandstone, muck, peat, loosely filled soil, underground water, sifting sand, or any unstable material, are not included in the Contract Price. Contractor has not and shall not conduct any soil studies or sampling at the premises and Owner, and not Contractor, shall be solely responsible for any construction defects or problems which relate to or arise from any problematic soil conditions. Owner shall conduct any soil testing and/or seek consultation with respect to soil conditions as Owner may desire. Additional labor and/or material made necessary by reason of deficiencies in soil conditions requiring extra footing, reinforcing, piers, concrete block, concrete walls shall be paid by the Owner in addition to the Contract Price. Owner shall pay Contractor additional charges based on actual cost of labor and materials plus 20%.

11. **EXCESS FILL DIRT**: In addition to the Contract Price, Owner shall be responsible for the expense of hauling fill dirt or other material, if necessary, to the premises and for hauling dirt or other materials away from the premises. Owner shall pay Contractor the additional charges based on actual cost of labor and material plus 15%.

12. **OWNER'S DEFAULT**: Owner represents that Owner is ready, willing and able to carry out the terms, provisions and conditions of this Agreement. Owner's refusal to fully and timely perform any of the terms of this Agreement shall result in Contractor, at Contractor's election, declaring this Agreement null and void, and Contractor shall have the right to bring any and all legal and/or equitable actions against Owner in conformity with Ohio law. Contractor shall additionally be entitled to retain Owner's deposit and recover all costs, losses, lost profits, damages and expenses incurred; including, but not limited to reasonable attorney's fees in the event of Owner's default.

13. **SUPERVISION**: Owner agrees that the direction and supervision of Contractor's working forces, including subcontractors, rest exclusively with Contractor. Owner shall not interfere with Contractor's working forces or subcontractors. Owner is not permitted, during this Contract; to perform any work at the Residence, or permit an agent that owner may hire, to perform any work at the Residence unless Owner receives the prior written consent of Contractor.

14. **COMMENCEMENT/COMPLETION**: Contractor shall commence with construction hereunder on or about_____. The job should take_____ to complete weather permitting and shall proceed diligently to complete the work. Contractor shall not be responsible for any delays to construction caused by Owner, Owner's agents, Acts of God, payment disputes, change orders, lender interference, weather conditions, soil conditions, strikes, material shortages, shipment delays, production delays, and/or any other matters or conditions beyond Contractor's reasonable control.

15. **CONTRACTOR'S WARRANTY AND LIMITATIONS**: Contractor shall provide Owner with a one (1) year limited warranty following the date upon which Owner takes possession of the Residence Improvement against defects in the quality of workmanship and materials. Contractor shall not be liable for any manufacturer's warranty for any and all appliances and equipment provided with and/or installed at the Residence; including, without limitation, any refrigerator, range, space heater, hot water heater, garbage disposal, ventilating fans, air conditioners, heating units, etc. Owner hereby releases Contractor from any and all liability from and after the one-year warranty period. Owner shall hold Contractor harmless from

# BROOKSTONE GENERAL CONTRACTORS BY DESIGN, INC.

and after the expiration of the one-year warranty period from any and all claims, demands, actions or causes of actions brought by third-party suppliers, subcontractors, manufacturers and/or any other third party.

At all times during construction and on the eleven month anniversary of the walk-through or move-in, whichever is earlier, should Owner discover any defect in construction or material, then Owner shall prepare and provide Contractor with written lists, signed and dated by Owner (copy attached to Limited Warranty), specifically identifying items that need repaired or completed. Owner shall provide Contractor with a reasonable time to repair and complete these items, which should not be less than thirty (30) days. IT IS THE SOLE RESPONSIBILITY OF OWNER TO SUBMIT THE LIST PROVIDED ON THE LAST PAGE OF THE WARRANTY AT THE ELEVEN MONTH ANNIVERSARY OF THE MOVE-IN OR WALK-THROUGH, WHICHEVER IS EARLIER. FAILURE BY OWNER TO SUBMIT THIS FINAL LIST FOR APPROVAL TO CONTRACTOR PRIOR TO THE ELEVEN MONTH ANNIVERSARY FORFEITS THE RIGHT OF OWNER TO HAVE THE APPROVED WARRANTY WORK PERFORMED.

Contractor shall not be responsible for any: (a) damage due to ordinary wear and tear or abusive use, (b) defects that are the result of characteristics common to the materials used, (c) loss, injury or damages caused in any way by the weather or elements, (d) conditions resulting from condensation on, or expansion or contraction of, any materials, or (e) paint over newly-textured interior walls.

Contractor's warranties are not transferable and shall terminate upon Owner's resale or transfer of the Residence.

This warranty is in lieu of all other warranties, statutory or otherwise, express or implied, all the representations made by Contractor and all other obligations or liabilities respecting the Residence. Owner agrees that Owner must commence any and/or all claims which Owner may have against Contractor within a one (1) year period from and after the date upon which Owner takes possession of the Residence or Owner shall otherwise be forever barred from instituting any cause of action there for.

16. **PERSONAL PROPERTY**: Any and all personal property of Owner that is in or near a work area is the responsibility of such Owner and Contractor is not responsible for any damage to or the monetary or replacement value of said personal property, and agrees to indemnify, defend and hold Contractor harmless from any claims related to stolen, damaged or destroyed personal property.

17. **INDEMNIFICATION**: Owner shall hold Contractor harmless and indemnify Contractor for any and all claims, actions, damages, or other liability, including, without limitation, attorney fees, professional witness fees, court costs, and other charges, arising out of or related to Owner's breach of any term or condition contained in this agreement.

18. **EXCESS MATERIALS**: Any materials left over upon completion of the Residence shall be deemed to be Contractor's property. Contractor may enter upon the premises to remove excess material(s) at all reasonable hours.

19. **NO WAIVER**: The failure of Contractor to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and/or conditions of this Agreement, shall not be construed as thereafter waiving any such terms and/or conditions or future breach, but the same shall continue and remain in full force and effect as if no such forbearance had occurred.

20. **CONCRETE**: Cracks, chips, spalling, scaling and pitting in the concrete due to weather, salt damage, shrinkage, or any other cause are not the responsibility of Contractor.

21. **PAINTING**:  Contractor should not be liable for cracks and other defects caused by the expansion and contraction of joints in the woodworking and trim resulting from seasonal changes in the weather.

22. **DEPOSIT**:  The Owner has deposited with Contractor the sum of    , which the parties agree shall be held in escrow and applied on the purchase price when the transaction is closed; or, if the Contractor fails or refuses to perform the Contractor's part of this Contract, the Deposit shall be returned to Owner, as Owner's sole and exclusive remedy; or, if the Owner fails or refuses to perform the Owner's part of this contract, said deposit shall be retained by Contractor but such retention shall not in any way prejudice the rights of the Contractor in any action for damages or a suit for specific performance.

23. **CLEAN UP**:  Contractor will leave the job broom clean each day and trash will be hauled away as needed (when a 10 yd. Truck may be filled).  At the end of the project, all trash and materials not used on the job will be removed.  Owner is responsible for final cleaning including, but not limited to, dusting, cleaning of fixtures, wiping and cleaning cabinets, floor sweeping or mopping, cleaning of any dust or dirt that may have blown through the house, cleaning or changing filters in the heating and cooling system, cleaning of the HVAC itself, windows, drapes, window treatments, etc.  Contractor will make every effort to limit dust and debris to the work area, but by no means will it guarantee there will not be dirt or dust that may filter into those areas of the Residence where construction is not occurring.

24. **DUST AND DIRT CONTAINMENT**:  Contractor will lay cloth tarps on floors from the entry place to the work place.  Plastic dust walls will be hung if possible.  30 gallon trash containers will be on the job site for small debris.  Contractor will make every effort to keep the job site clean; however, there are no warranties or guarantees provided as to dust/dirt.  Any additional requests by Owner, such as covering any furniture or removing furnish or accessories must be put in writing and made part of this Agreement and will be charged for accordingly.

25. **PHONE**:  Owner agrees to allow reasonable phone access to Contractor to make and receive local calls.

26. **LAVATORY**:  Owner agrees to provide a lavatory designated for use by Contractor's employees and its sub-contractors for the duration of construction.  If not provided, Contractor will provide a Porta-John at Owner's expense.  Price will be based on a local supplier and paid directly to the supplier by the Owner.

27. **LUNCH AREA**:  If workers are to eat at the Residence and Owner wishes them to eat in a particular spot, Owner must designate that location in writing before construction begins.

28. **PARKING**:  Parking of vehicles will be in Owner's drive or in front of Owner's Residence.  It is Owner's responsibility to provide neighbors with notice of any inconvenience.

29. **MATERIALS/EQUIPMENT**:  It is the Owner's responsibility to provide a location, such as a garage, for materials, equipment that needs to be stored on site.

30. **SIGNS**:  Owner agrees to allow Contractor to place a sign from Contractor on Owner's Premises.  No other sign will be permitted during construction and for a period of 60 days following completion of construction (with the exception of a real estate sign).

31. **ACCESS TO RESIDENCE**:  There must be a door or doors provided for entry to the Residence.  A key or a house sitter must be provided Monday through Friday 8 a.m. to 5 p.m. and Saturdays by the request of Contractor.  If a key is provided, the only people that will have access to it will be the Contractor's foreman and Contractor's sales person.  If construction is delayed due to no access, Owner will be assessed a fee of $29.00 per hour per man until access is provided.

## BROOKSTONE GENERAL CONTRACTORS BY DESIGN, INC.

32. **DRIVEWAY/SIDEWALKS/ACCESS**: Owner hereby expressly and unconditionally allows Contractor and its material men and subcontractors, the right to drive over driveways and sidewalks with their trucks, backhoe, concrete trucks, delivery trucks, etc. Unfortunately, this may result in cracks or other damage. If this does occur, Contractor will have it repaired at Owner's expense. Contractor does not guarantee/warranty against cracks and/or other defects. In the event these conditions do occur, the repair will be done as a change order to the Contract. If access to a Residence involves crossing over (or partially crossing over) another property, it is the Owner's responsibility to obtain written permission from the Property owner to allow for such access. Owner hereby agrees to pay for any grounds or landscaping repairs that may be needed, and agrees to indemnify, defend and hold Contractor harmless from any claims that may be asserted by such property owner.

33. **LANDSCAPING AND DRAINAGE**: It is the Owner's responsibility to make all yard repairs and underground drainage repairs, if necessary. All trees, shrubs, flowers and/or landscaping that are to be moved are the responsibility of the Owner. Contractor may move them with a backhoe but takes no responsibility for damage or death to the plantings. Contractor will rough grade the area being worked. All other landscaping and finish grading must be in writing and noted in the Specifications. Owner agrees that Contractor will not be responsible/liable in any manner whatsoever for the damage and/or death to any plantings or landscaping.

34. **LEAD BASED PAINT DISCLOSURE**: Owner hereby acknowledges receipt and review of the pamphlet "Protect Your Family From Lead In Your Home". Alternatively, Owner hereby acknowledges that Owner's Residence was constructed after January 1, 1978. Initials _____     _____

35. **MODIFICATION**: Any modification of this Agreement other than as specified herein and/or any Contract Documents shall be binding only if evidenced in writing signed by both Owner and Contractor or an authorized representative of either.

36. **ENTIRE AGREEMENT**: This Agreement shall constitute the entire agreement and understanding between Owner and Contractor and any prior understandings or representations of any kind preceding the date of this Agreement shall not be binding upon either party except to the extent the same is/are incorporated within this Agreement.

Contractor and Owner acknowledge that there are no covenants, representations, warranties, agreements, or conditions, either expressed or implied, which in any way affect, or are a part of, or relate to this Agreement, except for those expressly set forth herein above.

37. **OHIO LAW**: This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

OWNERS:

**BOOKSTONE GENERAL CONTRACTORS BY DESIGN, INC.**

By: _Brookstone ctr James Bru Presdt_

_____
(Signature)

Dated: _____

Dated: _July 2, 2014_

P.O. Box 1805 • Kent, Ohio 44240 • Office 330-678-0299 • Fax 330-678-8299

**(Signature)**

**Dated:**_____

*Jones Copy*



# BROOKSTONE
GENERAL CONTRACTORS INC.
*by design*

PO Box 1805
Kent, Ohio 44240
phone: 330-678-0299 fax: 330-678-8299

## FAX

Date: 2/7/14

To: HSBC LOSS DRAFT

From: Terri Cope

Fax: 678-459-9191

Phone: 330-554-1615

Re: HSBC 0013464094

CC: 4 pages including cover

*COMMENTS:

please find the following documents per your request:
1. Insurance Loss information sheet
2. Letter of responsibility
3. Allstate total loss sheet.



EXHIBIT

D

Replacement Cost Estimate for:
# HOWARD JONES

HSBC 1364094

Prepared by: User cdymk@allstate.com
(cdymk@allstate.com@xm8_4509a40c242840797588)
Valuation ID: AA2BR88.25

### Owner Information
Name: **HOWARD JONES**
Street: **4134 ROCK SPRING RD**
City, State ZIP: **RAVENNA, OH 44266**
Country: USA

Date Entered: 12/03/2013
Date Calculated: 12/06/2013
Created By: User cdymk@allstate.com
(cdymk@allstate.com@xm8_4509a40c242840797588)
Owner: 71 XM8Profile (71@xm8profiles)

### General Information
Most Prevalent Number of Stories: **1 ½ Stories (Attic)**
Use: **Single Family Detached**
Percent of half story or attic that is finished: **100%**
Quality Grade: **Standard**
Site Access: Average - No Unusual Constraints

Sq. Feet: **1152**
Year Built: **1945**
Style: **Cape Cod**
Cost per Finished Sq. Ft.: $117.52

### Foundation
Foundation Shape: **4-5 Corners - Square/Rectangle**
Foundation Material: **70% Block, 30% Stone**

Foundation Type: **30% Concrete Slab, 70% Crawlspace**
Property Slope: None (0 - 15 degrees)

### Exterior
Roof Shape: **Gable**
Roof Construction: 100% Wood Framed
Exterior Wall Construction: 100% Wood Framing

Number of Dormers: **0**
Roof Cover: **100% Composition - 3 Tab Shingle**
Exterior Wall Finish: **20% Siding - Alum. or Metal, 80% Siding - Vinyl**

### Interior
Average Wall Height: **7**
Floor Coverings: **50% Carpet, 10% Laminate, 40% Hardwood - Plank**
Ceiling Finish: **75% Paint, 25% Paneling - Tongue and Groove**

Interior Wall Material: **70% Drywall, 30% Plaster**
Interior Wall Finish: **70% Paint, 30% Paneling - Tongue and Groove**

### Key Rooms
Kitchens: **1 Medium - (11'x10')**
Bathrooms: **1 Full**
Bedrooms: **2 Large - (14'x12')**

Attached Structures
Patio(s) / Porch(es): 41 sq. ft. Concrete Porch

### Systems
Heating: **1 Wood Burning Furnace - Forced Air**

Fireplace(s): **1 Masonry Fireplace**

### Additions
New Addition
Year Built: **1985**

Square Feet: **284**

## Estimated Functional Replacement Cost

Calculated Value:

# $135,384.93
($133,119.09 - $137,650.77)

## Actual Cash Value (Age: 68, Effective Age: 35)

Calculated Value:

# $96,671.51

powered by
360Value

The estimated replacement costs above represent the approximated costs required to rebuild a similar structure generally described herein in the referenced geographic market. It includes pricing for labor, materials, applicable permits and fees, sales tax, and contractor's overhead and profit; it does not include costs for major excavation or land value. This estimate is intended to function as one of several sources of information in estimating a replacement cost and is not guaranteed to represent actual replacement costs in the event of damage or loss.

(Replacement cost includes all applicable permits, fees, overhead, profit, and sales tax)

The following slab items are excluded from this value: Foundation

13.10.19 PL:OHAKXV_OCT13